UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-22487-CIV-GOLD/McALILEY

EDGARDO FLORES, JOSE
ROSALES, and NESTOR BENITEZ,

    Plaintiffs,

v.

NUVOC, INC., a Florida Corporation,
RAPHAEL BARUCH and JUAN SARDA,

    Defendants.
_____/

### ORDER ON DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ON OTHER PENDING MOTIONS

This matter is before the Court upon Defendants' Renewed Motion for Directed Verdict or Alternatively Motion for Judgment Notwithstanding the Verdict and Motion for New Trial **[DE 216, 217]**. In addition, Plaintiffs have filed a Motion for Liquidated Damages **[DE 205]**, and an Alternative Motion to Strike Motion for Judgment NOV, Motion for New Trial, Renewed Motion for Directed Verdict **[DE 225]**. Oral argument was held on November 14, 2008. For reasons stated in this Order, I grant Defendants' Rule 50 motion and deny all other pending motions.[1]

---

[1] In this case, the jury rendered verdicts for the three Plaintiffs. As to each Plaintiff, the jury concluded that each was an employee of Nuvoc; that Defendant Raphael Baruch was his employer; that the enterprise was engaged in interstate commerce and that the enterprise met the requisite $500,000 gross volume of sales or business done **[DE 201, 202 and 204]**. Plaintiff Flores was awarded $1,000.00; Plaintiff Rosales was awarded $480.00, and Plaintiff Benitez was awarded $6,500.00.

1

## II. DISCUSSION

The Plaintiffs argue that they qualify for enterprise coverage under the FLSA because as part of their employment, they were employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person.[2] The Defendants argue that they are entitled to judgment as a matter of law because, under the undisputed facts, none of the Plaintiffs qualify under the first prong of enterprise coverage. The Defendants further argue that the preponderance of the evidence fails to establish that, under the second prong of enterprise coverage, the enterprise did annual gross sales or business done in excess of $500,000.

A. Standard of Review

The standard for judgment as a matter of law mirrors that of summary judgment in that the non-movant must do more than raise some doubt as to the existence of facts but must produce evidence that would be sufficient to require submission of the issue to a jury. *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1267 (11th Cir., 2006); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although this Court must look at the evidence in the light most favorable to the non-moving party, "the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). Therefore, a substantial conflict in the evidence is required before a matter will be sent to the jury, and the grant of a Rule 50 motion is proper when the evidence is so weighted in favor of one side that that party is entitled to succeed

---

[2] Plaintiffs concede that they do not qualify under the "individual coverage" prong of the FLSA.

2

in his or her position as a matter of law. *Id*. I conclude that the Plaintiffs failed to raise a substantial conflict in the evidence that their activities on behalf of the enterprise were inherently local. Applying these criteria, I conclude that the Defendants are entitled to judgment as a matter of law.

B. <u>Enterprise Coverage</u>

1. <u>Engaged in Commerce or in the Production of Goods for Commerce</u>.

To establish a claim for overtime compensation under the FLSA, Plaintiffs must show that either they were engaged in commerce or in the production of goods for commerce (individual coverage) or, that Nuvoc is an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage). See 29 U.S.C. § 207(a)(1). As already mentioned, the Plaintiffs concede that they are not covered by the "individual coverage" prong." The issue, therefore, is whether they fall within the second prong of "enterprise coverage."

An enterprise engaged in commerce or in the production of goods for commerce is defined as an enterprise that:

> (i) has employees eng aged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)

29 U.S.C. § 203(s)(1)(A).

The regulation interpreting the FLSA clarifies that:

> An enterprise ... will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been

> moved in or produced for commerce by any person, if ... it regularly and recurrently has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238.

Since it is conceded that the neither the Plaintiffs nor the Defendants were engaged in commerce[3] or in the production of goods for commerce, the legal question is whether the Plaintiffs were "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." There were no material issues of fact before the jury on these questions.[4] With all inferences in favor of the Plaintiffs, only some of the lumber used by the Plaintiffs for the construction of the shell of the two houses had actually traveled in interstate commerce. Plaintiffs had acknowledged before trial and at oral argument on the Rule 50 motions that the lumber had came to rest within metropolitan Dade County, Florida, at Shell Lumber and Hardware and Florida Lumber Company before being purchased by Nuvoc to "shell out" the two homes in Coconut Grove, Florida. Moreover, there is no record evidence that the Defendants had contracts or solicited business outside of Florida. Nor is this a case where Nuvoc directly used the instrumentalities of interstate commerce to order the lumber, or that the lumber directly traveled in interstate commerce to the building site prior to the time it was handled or

---

[3] Plaintiffs acknowledge that the evidence at trial established that Nuvoc did not market the two houses in interstate commerce. At best, one house was to be used personally by Defendant Raphael Baruch. The other house was to be rented or sold locally.

[4] There was a factual question as to whether Plaintiff Nester Benitez regularly worked on the site with lumber but I assume that he did for purposes of Defendants' Rule 50 motion.

worked on by the Plaintiffs in the construction of the two homes.

No published opinion in the Eleventh Circuit has ruled precisely on the application of the " handling" or "otherwise working on" language of this aspect of the "enterprise" prong of the FLSA. However, the Eleventh Circuit has held in a recent unpublished opinion that there is no enterprise coverage where the goods handled by the employees were bought in Florida after having come to rest in Florida at a retail store, and the goods were not resold or otherwise used to produce goods that were to be moved in interstate commerce. *Scott v. K.W. Max Inv., Inc.*, 256 Fed. App. 244, 248 (11th Cir. 2007).[5] In *Scott*, Plaintiff was a home construction worker who did remodeling and yard work, and loaded supplies and materials on to a barge for transport to the work site where a house was being constructed. These materials came primarily from the local Home Depot. The Court found that the only material that "moved in commerce" was not the materials purchase from Home Depot, but the lumber that the employer took from a house outside Florida that was torn down and brought to the construction site. *Id.* (holding however, that the first prong was nevertheless not met because the use of the lumber was only a sporadic instance of employees using materials that have moved in commerce). *Scott* therefore applies the definition of "in commerce" found in *Thorne*, supra – i.e. "directly participating in the actual movement of persons or things in *inter*state commerce," in the enterprise coverage context. *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312, 1317 (S.D. Fla. 2008) (emphasis added) (referencing *Thorne*, 448 F.3d at 1266).

---

[5] As an unpublished opinion, under Eleventh Circuit Rule 36-2, this case is not binding precedent.

The *Scott* approach has been adopted by decisions in this district. In *Polycarpe v. E & S Landscaping Service, Inc.*, office supplies, landscaping materials, and tools that had previously traveled in interstate commerce handled by employees were not considered goods for the purposes of enterprise coverage, where employer, as consumers, purchased these goods locally in South Florida. 572 F. Supp. 2d 1318, 1321 (S.D. Fla. 2008). Similarly, in *Bien-Aime*, supra, a local landscaping business that consumed gasoline in the operation of its equipment and bought local products for its business using credit cards was found not to implicate interstate commerce in the manner intended to trigger the application of enterprise coverage under the FLSA. 572 F. Supp. 2d at 1317. In *Lamonica v. Safe Hurricane Shutters, Inc.*, a hurricane shutter installation business was not "engaged in commerce" and thus not subject to enterprise coverage where there was no showing that blades manufactured in Columbia used in the business were purchased directly from Columbia. 2008 WL 4346323 (S.D. Fla., Sep. 23, 2008). Finally, in *Morales v. M & M Painting and Cleaning Corp.*, 2008 WL 4372891 (S.D. Fla, Sep. 24, 2008), the court held although the plaintiffs were painters who may have used paint that was manufactured outside of Florida, there was no evidence that the paint was purchased for resale or that the defendants were not the end-users or ultimate consumers of the paint and, accordingly, the evidence was insufficient to support a finding that the defendants were engaged in commerce under the FLSA.

Plaintiffs argue for a more expansive interpretation of the scope of enterprise coverage. Indeed, one decision in this district has adopted a different interpretation of 28 U.S.C. § 203(s)(1)(A), although the facts are not identical to those here. *See, e.g., Galdames v. N & D Investment Corp.*, 2008 WL 4372889 (S.D. Fla., Sep. 24, 2008)

6

(finding that the language of the statute does not require a showing that an employee was directly participating in the actual movement of persons or things in interstate commerce, only that employees handled goods or materials that at some point moved in interstate commerce).[6] I decline to follow and apply *Galdames*.

In *Galdames,* the employer had leased or purchased equipment and supplies that came from out-of-state suppliers. There also was evidence that some of the goods were either directly shipped to the employer or were shipped to a local distributor for delivery directly to the employers. This is not the situation here. There was no direct nexus between the out-of-state suppliers and the enterprise Defendants. In this case, the Defendants had simply purchased the goods at local lumber companies once the lumber had come to rest. The lumber was repurchased by the Defendants, just as it could have been repurchased by anyone. There was no record in this case showing that the Defendants specially ordered the lumber for shipment to the local lumber companies so that the lumber then could be later delivered to them. *Compare Galdames* at 2008 WL 4372889, at * 4.

Further, Judge Cooke, in *Galdames,* rejected the application of *Scott* as well as *Lamonica* because neither recognized nor analyzed the significance of the addition of the words "or materials" to Section 203(s). According to Judge Cooke, it is sufficient if the "materials" had moved in interstate commerce in any respect. Based on the addition of

---

[6] *See also Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 695 (4th Cir. 1990) (nursing home was engaged in commerce where its employees handled food, laundry supplies, and other materials that have previously moved in interstate commerce, even if employer was the ultimate consumer of these materials); *Donovan v. Pointon*, 717 F.2d 1320, 1322-23 (10th Cir. 1983) (enterprise coverage satisfied where construction worker employees used goods or materials which had moved in interstate commerce, regardless of the fact the employer may have acquired the goods or materials in-state).

these words, Judge Cooke would read the statute to mean that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA (citing to *Dunlop v. Indust. American Corp.,* 516 F.2d 498, 500-02 (5th Cir. 1975)). Of importance, the statement in *Industrial American Corporation* concerning the future scope of Section 3(s) of the Act is dicta only.

In this case, the lumber at issue is more consistent with the statutory definition of "goods" than "materials." Goods are defined to include "wares, products, commodities, merchandise, or articles or subjects of commerce of commerce of any character" but, the definition specifically goes on to say that it excludes "... goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." 29 U.S.C. § 203(i). This broad definition seemingly encompasses "materials" which otherwise remains undefined by the statute. Nonetheless, Congress did amend the Act to place the word "materials" after "goods." Since goods have a specific definition, materials must refer to those remaining articles or subjects of commerce which have *not* come into the actual physical possession of the ultimate consumer before the Plaintiffs handled or worked on them and which are consumed. To reason otherwise reads the definition of "goods" out of the statute by suggesting that the FLSA applies to any product that has moved at one time in interstate commerce regardless if it first came to rest. Instead, "materials" has a more limited meaning by including any disposable products that may be used or consumed in the operation of the business and which had moved directly in interstate commerce as a result of some action directly linked to the employer, such as where the employer orders the materials directly through the channels of interstate commerce.

Based on my review of Eleventh Circuit case law, I decline to adopt Judge Cooke's more expansive interpretation. For several reasons, I conclude that the first prong of enterprise coverage requires some nexus between the enterprise and the goods or materials being handled by the employee that have moved in (or were produced for) interstate commerce. Where the enterprise acquired from within the state the goods or materials used by its employees and has no role in causing goods or materials to move in interstate commerce to employees for their use in the business, enterprise coverage is not triggered. First, this approach is consistent with the plain reading and construction of the first prong, which defines the employees' functions in the context of an enterprise being engaged in commerce. Second, this interpretation is consistent with the holding of *Scott* and *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264 (11th Cir. 2006)[7], the most

---

[7] Plaintiff is correct that *Thorne* involved "individual coverage" and not "enterprise coverage." But it is anomalous to argue that it was the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce, when individual employee activities are concerned, but, at the same time, to allow an "affect commerce" standard when individual activities are considered (i.e "handling," "working on") in the context of the enterprise itself. See *Thorne*, 448 F.3d 1264, 1266 (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497).

In *Thorne*, the plaintiff employee "performed mold and water damage restoration work for residential and commercial properties .... [and] performed ministerial work ... which included making purchases of goods for the company." *Id.* at 1265. The plaintiff argued, in part, that individual FLSA coverage applied because he had engaged in commerce when, in connection with his employment, "he purchased goods [from local retail stores] which had traveled in interstate commerce." *Id.* at 1267. In addressing this argument, the court discussed whether the defendant employer was the ultimate consumer of the goods, because when goods reach the ultimate consumer "for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act." Id. (emphasis in original) (citing *McLeod*, 319 U.S. at 493, 63 S.Ct. 1248). The court noted the distinction between "merchants who bring commerce across state lines for sale and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use." *Id.* The court concluded that the plaintiff's employer was the ultimate

recent Eleventh Circuit cases to address coverage under the FLSA. Third, the Eleventh Circuit has found the Congressional intent behind the FLSA was to limit its reach to local businesses. *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir. 1983) ("Congress's primary purpose in refusing to extend FLSA's coverage to its constitutional maximum was to leave regulation of "local" business to the states "). Finally, courts have acknowledged that an interpretation of the first prong that requires no such nexus would render the application of the FLSA nearly limitless in the modern era.[8] *See, e.g., Bien-Aime*, 572 F. Supp. 2d at 1317. Accordingly, I conclude that the Defendants are entitled to a Rule 50 motion based on the Plaintiff's failure to establish the first prong of enterprise coverage under the FLSA. Similar to the circumstances in *Polycarpe,* Nuvoc's business in constructing the two houses was strictly of a local nature and the various items used in the business as "materials" merely proliferated this goal of local construction. 572 F. Supp. 2d at 1321.

    2. <u>Annual Gross Volume of Sales or Business Done is Not Less than $500,000</u>

---

consumer of the goods in question, and consequently, the plaintiff "did not produce sufficient evidence that he engaged in interstate commerce." *Id.* at 1268. *See also Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (citing *Thorne*)("The automotive parts were removed from the flow of interstate commerce when they arrived at the auto parts store.... The later transport and installation of the parts into the vehicles of Broney's customers by Nararro [the employee] was purely intrastate activity and 'not covered under the Act.'"

[8] In *Dunlop v. Industrial America Corp.*, the Fifth Circuit found in resolving a dispute under the FLSA as codified prior to the adoption of the present statutory language that the 1974 amendments to the FLSA were intended to broaden the scope of enterprise coverage to reach significantly more businesses. 516 F.2d 498, 502 (5th Cir. 1975).

The second prong of "enterprise coverage" is that the enterprise must have an annual gross volume of sales made or business done in an amount of not less than $500,000.00. In this case. In this case, the three plaintiffs worked for Nuvoc at various times from the period of June through sometime in September, 2006. At trial, the Defendants offered the corporate tax returns of Nuvoc for the years 2005 and 2006 which reflected gross receipts, sales or business in the amounts of $191,088 and $211,00 respectively. Recent decisions by district courts in this circuit have held that an enterprise's total gross volume sales or business done may be determined from its tax returns. *Stout v. St. Amour's Lawn Care*, LLC, 2008 WL 816818 *2 (M.D. Fla., Mar. 25, 2008); *Thompson v. Robinson*, 2007 WL 2714091 *4 (M.D. Fla., Sep. 17, 2007); see *Lopez v. Top Chef Investment, Inc.*, 2007 WL 4247646 *3 (S.D. Fla., Nov. 30, 2007) (rejecting Plaintiff's conclusory assertions that Defendants had understated their income on their federal tax returns and accepting the gross income figure on Defendants' federal tax return in considering whether enterprise coverage existed). See also *Russell v. Continental Restaurant, Inc.*, 430 F. Supp. 2d 521, 524 (D. Md. 2006) (granting motion to dismiss for lack of subject matter jurisdiction where affidavit and tax returns submitted by employer reflect gross sales volume less than $500,000); *Xelo v. Mavros*, 2005 WL 2385724, *3 (E.D.N.Y. 2005) (finding no enterprise coverage based on gross receipts reported in tax returns from the years where the plaintiff claimed unpaid overtime compensation); *Avila v. Lee*, 1989 WL 200976, *2 (W.D. Mich., Jul. 13, 1989) (holding tax returns may be utilized by defendants as long as the same accounting procedure is used consistently and the procedure accurately reflects the annual volume of sales or business).

Revenues may not be the only basis for determining total volume. In 1966, Section

203 was amended to include "business done." The Supreme Court has stated, "the Senate Report in the 1966 amendments makes clear that the added language was intended to dispel any uncertainty that revenue derived from services, rentals or loans, even though perhaps not literally 'sales,' was nevertheless to be considered in measuring the dollar-volume limitation of § 3(a)." *Falk v. Brennan*, 414 U.S. 190, 198-99 (1973); *see Wirtz v. Savannah Bank & Trust Company*, 362 F.2d 857 (5th Cir. 1966).

But, because Plaintiffs have not met the dollar volume test through Nuvoc's tax returns, they rely on Defendants' recorded total deposits for 2005 and 2006 through application of what is known as the "rolling quarter method." The rolling quarter method originated in the Interpretative Bulletin in the Code of Federal Regulations that provides as follows:

> [W]hen there may be doubt whether an enterprise or establishment has an annual gross volume of sales made or business done in excess of the amount specified in the statute, an analysis will be made at the beginning of each quarter year so that the employer will know whether or not the dollar volume tests have been met for the purpose of complying with the law in the workweeks ending int the current quarter-year. The total of the gross receipts from all its sales or business during a twelve month period which immediately precedes the quarter-years being tested will be the basis for the analysis ...

See 29 CFR § 779.266(b).

In *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191 (5th Cir. 1976),[9] the former Firth Circuit upheld the district court's refusal, as a matter of law, to apply the "rolling quarter" method in computing the annual dollar volume of sales for purposes of the FLSA. The court recognized, citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed 124,

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were rendered prior to October 1, 1981.

that although such bulletins "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," they, nevertheless, " ... do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do." 538 F.2d at 1193. In *Usery*, the district court held that the "Defendant is a marginal business insofar as the wage-and-hour law is concerned, and the only logical way to approach the matter is on the establishment's fiscal year ... the last month of the fiscal year could make the difference as to whether or not the business would continue to be exempt or not." *Id.* The court stated that it did not consider the "rolling quarter method" of computing the annual dollar volume of sales to be fair when applied to the facts. *Id.*

I conclude that the "rolling quarter method" is not appropriate given the facts of this case. Nuvoc was a marginal business. Its primary purpose was to construct the two houses in Coconut Grove, Florida. The houses were to be constructed by means of a construction loan. The construction loan operated as a secured credit line under which the only amounts released to the borrower by the bank were subject to the approval by a bank inspector once a task had been completed. The uncontradicted testimony from Defendant Baruch was that he had to advance funds repetitively in expectation of the upcoming draws. In this case, the total volume of deposits recorded for the Defendants and utilized by Plaintiffs' counsel to meet the $500,000 threshold on the "rolling quarter method" also consisted of internal transactions between Defendant Baruch, the sole owner of Nuvoc, and Defendant Nuvoc which Nuvoc repaid to Baruch when the draw was funded. Thus, for instance, in 2006, Nuvoc accomplished $211,000 of gross business. In that same year, Nuvoc received those funds under four separate draws. Although Nuvoc's bank account

reflected $371,000 of total deposits, $211,000 represented the actual business done and $160,000 presented the total amount of loans made by Mr. Baruch to the enterprise. Accordingly, the rolling quarter method is not a reliable measure of gross volume of sales made of business done.[10] I conclude that insofar as wage-and-hour law is concerned, the fair way to approach the calculation of the criteria is on Defendant's fiscal year. This seems particularly appropriate where the Plaintiffs periods of employment are wholly within the 2006 calendar year, beginning in the first quarter and ending in the last quarter.

Even if the "rolling quarter method" was utilized, and I further assume that Defendant Baruch was included as an entity of the enterprise, I nonetheless conclude that Plaintiffs still have not met their burden to establish the second prong by a preponderance of evidence because internal transactions between members of the enterprise are excluded in calculating annual gross volume of sales made of business done. The Interpretative Bulletin of the Code of Federal Regulations provide for the exclusion as follows:

> [T]he annual gross volume of sales made or business done of an enterprise consists of its gross receipts from all types of sales made and business done during a 12-month period. The gross volume of sales made or business done means the gross dollar volume (not limited to income) derived from all sales

---

[10] The total deposits in 2005 were $288,000.00 but internal transactions accounted for $96,912 or a net remaining of $191,088.00. When internal transactions are deducted for 2005 and 2006, the total amount of gross volume of sales of business done for both years was only $402,088 over a twenty-four month period. Using the bookkeeper's [Ms. Maxion] own figures of total deposits including 40% of internal transactions, no four-consecutive quarter periods from the Nuvoc's inception through the end of 2006 amounted to a gross annual revenue or business done in excess of $500,000. See Casseus v. First Eagle, L.L.C., 2008 U.S.Dist. LEXIS 32249 (S.D.Fla. April 16, 2008)(Where corporate Defendant's gross annual volume of sales for all four-consecutive quarter periods from 2005 through 2007 were less than $500,000, summary judgment was required).

and business transactions including, for example, gross receipts from service, credit, or other similar charges. Credits for goods returned or exchanged and rebates and discounts, and the like, are not ordinarily included in the annual gross volume of sales or business. The gross volume of sales or business includes the receipts from sales made or business done by the retaill or service establishments of the enterprise as well as the sales made or business done by any other establishments of the enterprise, **exclusive of the internal transactions between them**.

On a final point, Plaintiffs argue that Nuvoc and Defendant Juan Sarda's company, the Operis Group, should be considered as the "enterprise" and the gross volume of sales and business done from four different real estate projects that eventually went into litigation should be aggregated to determine if the $500,000 amount is reached. The testimony of in this regard was too indefinite and speculative to support a jury verdict. The uncollected (and so far unawarded ) damages cannot be considered in the calculation of the enterprise's dollar volume.

Thus, for these reasons, I conclude that the Plaintiffs have failed to establish by the preponderance of the evidence in a manner upon which the jury could lawfully conclude that the second prong of enterprise coverage has been met.[11]

**WHEREFORE**, it is **ORDERED**:

1. Defendants' Motion for Judgment as a Matter of Law **[DE 216, 217]** is granted.

2. Defendants' Motion for New Trial **[DE 216, 217]** is denied.

3. Plaintiffs' Motion to Strike **[DE 225]** is denied.

4. The jury verdicts **[DE 201, 202 and 204]** are vacated.

5. Plaintiffs' Motion for Liquidated Damages **[DE 205]** is denied as moot.

---

[11] I deny without comment the Defendants' motion for new trial that is based on the argument of improper statements of fact and law provided by Plaintiffs' counsel to the jury.

**ORDERED** this  ) 4 day of November, 2008.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Chris M. McAliley