# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia 30303

**John Ley**
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

November 15, 2010

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813



FILED by _____ D.C.

NOV 2 2 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**Appeal Number: 08-17109-EE**
Case Style: Edgardo Flores v. Nuvoc, Inc.
District Court Number:  06-22487 CV-ASG

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one folder, one envelope
    Original record on appeal or review, consisting of: ten volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
## For the Eleventh Circuit

No. 08-15154

District Court Docket No.
07-23223-CV-JLK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2010
JOHN LEY
CLERK

RESIAS POLYCARPE,
REYNOLD SULLY, and other
similarly situated individuals,

Plaintiffs-Appellants,

versus

E & S LANDSCAPING SERVICE, INC.,
ERNST MAYARD,

Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

No. 08-15290

District Court Docket No.
07-22645-CV-JAL

PIERRE C. BIEN-AIME,

Plaintiff-Appellant,

versus

NANAK'S LANDSCAPING, INC.,

Defendant-Appellee.

No. 08-15963

District Court No.
07-61295-CV-JIC

REINALDO RAMON LAMONICA,
REONALDO GOMEZ MORSA,
AUGUSTIN MILAN,
ANGELES LAMONICA SOLER
MARIO FELICIANO,
GUILLERMO ALBOREZ,
JULIO ALBOREZ,
GIOVANI PEREZ,
PEDRO LOPEZ VASQUEZ,
on behalf of themselves and other
employees similarly situated,

Plaintiffs-Appellants,

versus

SAFE HURRICANE SHUTTERS, INC.,
a Florida corporation d.b.a.
Advanced Hurricane Protection,
EDWARD LEIVA,
STEVE HEIDELBERGER,
FRANCIS MCCARROLL,

Defendants-Appellees.

No. 08-17055

District Court Docket No.
08-60269-CV-CMA

RICHARD MILBOURN,
individually and on behalf of
others similarly situated,

Plaintiff-Appellant,

versus

AARMADA PROTECTION SYSTEMS 2000, INC.,
a Florida corporation, and WAINSWORTH
JACKSON, individually,

Defendants-Appellees.

_____

No. 08-17109

_____

District Court Docket No.
06-22487-CV-ASG

EDGARDO FLORES,
JOSE ROSALES,
NESTOR BENITEZ,

Plaintiffs-Appellants,

versus

NUVOC, INC.,
a dissolved Florida Corporation,
BARUCH RAPHAEL,
JUAN SARDA,

Defendants-Appellees.

_____

No. 09-10938

_____

District CourtNo.
08-22271-CV-WJZ

JUAN CARLOS VALLECILLO,
and all others similarly situated,

WILARD DULANTO,
FELIPE MENDOZA,
TROY ALLEN WHITTEN,
JUAN ANTONIO VARGAS,
CLAUDIO WHITTEN,

                Plaintiffs-Appellants,

versus

WALL TO WALL RESIDENCE REPAIRS INC.,
Jorge Acosta, Registered Agent
5701 N.W. 23 Street
Margate, FL 33063,
JORGE ACOSTA,
ELOISA M. LIM,

                Defendants-Appellees.

------------------------------------------------------------------

Appeals from the United States District Court
for the Southern District of Florida

------------------------------------------------------------------

JUDGMENT

    It is hereby ordered, adjudged, and decreed that the attached opinion included herein by
reference, is entered as the judgment of this Court.

Entered:   August 31, 2010
For the Court:   John Ley, Clerk
By:   Clark, Djuanna

ISSUED AS MANDATE
NOV 1 5 2010
U.S. COURT OF APPEALS
ATLANTA GA

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2010
JOHN LEY
CLERK
```

No. 08-15154

_____

D. C. Docket No. 07-23223-CV-JLK

RESIAS POLYCARPE,
REYNOLD SULLY, and other
similarly situated individuals,

Plaintiffs-Appellants,

versus

E & S LANDSCAPING SERVICE, INC.,
ERNST MAYARD,

Defendants-Appellees.

_____

No. 08-15290

_____

D. C. Docket No. 07-22645-CV-JAL

PIERRE C. BIEN-AIME,

Plaintiff-Appellant,

versus

NANAK'S LANDSCAPING, INC.,

Defendant-Appellee.

_____

No. 08-15963

_____

D. C. Docket No. 07-61295-CV-JIC

REINALDO RAMON LAMONICA,
REONALDO GOMEZ MORSA,
AUGUSTIN MILAN,
ANGELES LAMONICA SOLER
MARIO FELICIANO,
GUILLERMO ALBOREZ,
JULIO ALBOREZ,
GIOVANI PEREZ,
PEDRO LOPEZ VASQUEZ,
on behalf of themselves and other
employees similarly situated,

Plaintiffs-Appellants,

versus

SAFE HURRICANE SHUTTERS, INC.,
a Florida corporation d.b.a.
Advanced Hurricane Protection,
EDWARD LEIVA,
STEVE HEIDELBERGER,
FRANCIS MCCARROLL,

Defendants-Appellees.

No. 08-17055

D. C. Docket No. 08-60269-CV-CMA

RICHARD MILBOURN,
individually and on behalf of
others similarly situated,

Plaintiff-Appellant,

versus

AARMADA PROTECTION SYSTEMS 2000, INC.,
a Florida corporation, and WAINSWORTH
JACKSON, individually,

Defendants-Appellees.

No. 08-17109

D. C. Docket No. 06-22487-CV-ASG

EDGARDO FLORES,
JOSE ROSALES,
NESTOR BENITEZ,

Plaintiffs-Appellants,

versus

NUVOC, INC.,
a dissolved Florida Corporation,
BARUCH RAPHAEL,
JUAN SARDA,

Defendants-Appellees.

———————————————

No. 09-10938

———————————————

D. C. Docket No. 08-22271-CV-WJZ

JUAN CARLOS VALLECILLO,
and all others similarly situated,
WILARD DULANTO,
FELIPE MENDOZA,
TROY ALLEN WHITTEN,
JUAN ANTONIO VARGAS,
CLAUDIO WHITTEN,

Plaintiffs-Appellants,

versus

WALL TO WALL RESIDENCE REPAIRS INC.,
Jorge Acosta, Registered Agent
5701 N.W. 23 Street
Margate, FL 33063,
JORGE ACOSTA,
ELOISA M. LIM,

Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Florida

---

(August 31, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,[*] District Judge.

PER CURIAM:

These six cases come before us because of controversy about the Fair Labor Standards Act ("the FLSA" or "the Act"). Defendants disputed their obligation to pay Plaintiffs the minimum wage or overtime under the Act. All of the district courts dismissed the cases on summary judgment or judgment as a matter of law because the courts concluded that the FLSA did not apply. We conclude that the district courts inaccurately interpreted the FLSA; so, in all cases except <u>Flores v. Nuvoc, Inc.</u>, we vacate the judgments and remand the cases.

---

[*] Honorable Jack T. Camp, United States District Judge for the Northern District of Georgia, sitting by designation.

5

# I. BACKGROUND

This matter is a consolidated appeal of six cases from Florida.[1]  All of the cases involve interpreting the Fair Labor Standards Act to determine whether employers are covered by the Act.  Plaintiffs are all employees who worked for Defendant employers in various capacities: landscapers, security-system technicians, and construction workers, among others.  Defendants are principally local service providers to customers within the state of Florida, although some Defendants also provide products in connection with their services.

Plaintiffs claimed that, during their employment, they worked more than forty hours per week and Defendant employers failed to pay them either a federally mandated minimum wage, federally mandated overtime pay, or both.  Each Plaintiff also described some of the items used in the course of his employment and provided some evidence showing that those items came from outside of Florida.[2]

---

[1] See Flores v. Nuvoc, Inc., 610 F. Supp. 2d 1349 (S.D. Fla. 2008); Vallecillo v. Wall to Wall Residence Repairs, Inc., 595 F. Supp. 2d 1374 (S.D. Fla. 2009); Milbourn v. Aarmada Protection Sys. 2000, Inc., 588 F. Supp. 2d 1341 (S.D. Fla. 2008); Polycarpe v. E & S Landscaping Serv., Inc., 572 F. Supp. 2d 1318 (S.D. Fla. 2008); Bien-Aime v. Nanak's Landscaping, Inc., 572 F. Supp. 2d 1312 (S.D. Fla. 2008); Lamonica v. Safe Hurricane Shutters, Inc., 578 F. Supp. 2d 1363 (S.D. Fla. 2008).  Cases consolidated for appeal only.

[2] One Plaintiff lists the following items: "lawn mowers, weedeaters, trimmers, chain saws, trucks, trailers, tires, oil, weedeater wire, edger blades, cellular telephones, facsimile machines, telephones, gasoline, pencils, paper, manila folders, sticky pads and pens."  Bien-Aime & Polycarpe Appellants' Initial Br. at 5–6.  Other Plaintiffs provide similarly detailed descriptions of the items with which they used during their employment.

Defendants did not dispute that they failed to pay Plaintiffs the minimum wage or overtime wages. With the exception of <u>Flores v. Nuvoc, Inc.</u>, Plaintiffs provided evidence (or received a stipulation) that Defendants grossed more than $500,000 in annual sales.

Plaintiffs all sued pursuant to the Act's provisions requiring covered employers to pay their employees minimum and overtime wages. <u>See</u> 29 U.S.C. §§ 206(a)–207(a). Defendants argued that they were not covered enterprises and so not subject to the Act.

Each Defendant ultimately prevailed. The district courts dismissed the cases because the courts concluded that the FLSA did not cover Defendant businesses. The courts concluded that, because the employers had purchased potentially qualifying "goods" or "materials" intrastate after those items had "come to rest," no sufficient interstate-commerce connection existed to bring about FLSA coverage. Several of the courts additionally concluded that Plaintiff employees had not handled the kind of "goods" or "materials" necessary to subject that employer to coverage under the FLSA. One case, <u>Flores v. Nuvoc, Inc.</u>, was also dismissed because the Defendant supposedly did not meet the minimum threshold of annual sales to be covered by the FLSA.[3] Plaintiffs appealed, and the cases

---

[3] In contrast to the other cases decided on a motion for summary judgment, <u>Flores v. Nuvoc, Inc.</u> proceeded through trial with a verdict for Plaintiffs. The district court then granted

were consolidated.

## II. DISCUSSION

### A.

The Fair Labor Standards Act of 1938 requires employers who meet its precondition to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week.  See 29 U.S.C. § 206(a) (minimum wage); id. § 207(a) (overtime pay).  While either individual coverage or enterprise coverage can trigger the Act's applicability, we are only concerned in this appeal with enterprise coverage.  See Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1265-66 (11th Cir. 2006).

An employer falls under the enterprise coverage section of the FLSA if it 1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and 2) has at least $500,000 of "annual gross volume of sales made or business done."

Defendants' motion for Renewed Judgment as a Matter of Law, concluding that no enterprise coverage existed to grant jurisdiction under the FLSA.

8

29 U.S.C. § 203(s)(1)(A).

Since its original enactment in 1938, Congress has amended the FLSA three times, each time enlarging the number of entities subject to coverage under the Act.  See Dunlop v. Indus. Am. Corp., 516 F.2d 498, 500-02 (5th Cir. 1975).  The Act's coverage initially was defined in terms of individual employees, not employers.  Id. at 500.  With the first amendment, in 1961, Congress expanded the FLSA in two relevant respects.  See Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, 75 Stat. 65 (1961).  First, it provided for enterprise-wide coverage rather than coverage of only certain qualifying individual employees. After the amendment, if an employer had two or more workers engaged in commerce or the production of goods for commerce, FLSA coverage extended to all of the enterprise's employees.  Dunlop, 516 F.2d at 500-01.

Second, Congress added what has come to be known as the "handling clause."  Under this clause, an employer will be considered to be an "enterprise engaged in commerce" if it has employees "handling, selling, or otherwise working on goods that have been moved in or produced for commerce . . . ."  29 U.S.C. § 203(s) (1961).  We have already noted, this amendment allowed the FLSA potentially to reach retail and service businesses that were otherwise locally focused.  Dunlop, 516 F.2d at 501.

9

After amendments (that do not bear on these appeals) in 1966, Congress amended the FLSA yet again in 1974, also, seemingly, to expand the Act's coverage.  See Fair Labor Standards Amendments of 1974, Pub. L. 93-259, 88 Stat. 55 (1974).  First, immediately before the handling clause, by replacing the word "including" with the word "or," Congress made satisfying the handling clause an independent basis for bringing an enterprise under FLSA coverage.  Id. Second, Congress added the words "or materials" to the handling clause.  Id.

The focus of these consolidated cases is this amended handling clause: whether Defendant employers had employees (not necessarily Plaintiffs specifically) "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A)(i) (emphasis added).

B.

The handling clause only pertains to "goods or materials that have been moved in or produced for commerce by any person."  Id. § 203(s)(1)(A)(i) (emphasis added).  The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or

10

between any State and any place outside thereof." Id. § 203(b) (emphasis added). The plain meaning of the handling clause is that it only applies to "goods" or "materials" that have been subject to interstate commerce.

An erroneous view of FLSA enterprise coverage--one that hangs on what is called the "coming to rest" doctrine--is at odds with this statutory text. The "coming to rest" doctrine is the belief that interstate goods or materials can lose their interstate quality if the items have already come to rest within a state before intrastate purchase by a business. See Donovan v. Scoles, 652 F.2d 16, 18 (9th Cir. 1981) (stating that this doctrine was appropriate when FLSA coverage depended not on enterprise coverage, but only on individual coverage: employees who were "engaged in commerce or the production of goods for commerce") (internal quotation marks omitted).

Binding precedent rejects this doctrine in the enterprise coverage context as based on an incorrect reading of the amended FLSA.  "'[T]he legislation was designed to regulate enterprises dealing in articles acquired intrastate after travel in interstate commerce.'"  Brennan v. Greene's Propane Gas Serv., Inc., 479 F.2d 1027, 1030 (5th Cir. 1973) (quoting Schultz v. Kip's Big Boy, Inc., 431 F.2d 530, 533 (5th Cir. 1970)).  See also 29 C.F.R. § 779.242 (stating that it is "immaterial . . . that the goods may have 'come to rest'").

11

The plain language of the statute compels this conclusion. Defendants fall under enterprise coverage if they have "employees handling, selling, or otherwise working on goods or materials that <u>have been</u> moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(i) (emphasis added). "The tense is in the past. There is no requirement of continuity in the present." <u>Brennan</u>, 479 F.2d at 1031. So, if a district court, ruling for a Defendant, applied the "coming to rest" doctrine--for instance, by looking at where Defendant bought an item instead of where an item was produced, we must vacate the judgment for the Defendant if there is a question about where the "goods" or "materials" were produced or where they have moved. The district courts will need to make some further decisions about the interstate history of the items in these cases.

C.

Significant disagreement also exists about a more difficult issue: the interplay of the terms "goods" and "materials" under the handling clause.

The FLSA provides enterprise coverage for employers whose employees are engaged in "handling, selling, or otherwise working on goods or materials." 29 U.S.C. § 203(s)(1)(A)(i). We first discuss "goods," which the statute expressly

12

defines elsewhere in the Act.

> "Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

29 U.S.C. § 203(i).

Included in this definition of "goods" is a clause often referred to as the ultimate-consumer exception: "but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." Before 1974, when only handlers of "goods" (and not also handlers of "materials") were potentially covered by the FLSA, the ultimate-consumer exception (if satisfied) could by itself exempt an employer from exposure to the FLSA. In other words, if the employer were the ultimate consumer of all of its "goods" that were moved in or produced for interstate commerce, and if the employer were not a "producer, manufacturer, or processor" of those "goods," the FLSA would not apply to that employer.

With the 1974 amendments, Congress also extended enterprise coverage to employers with employees "handling, selling, or otherwise working on goods or materials . . . ." 29 U.S.C. § 203(s)(1)(A)(i). We do not question that Congress's use of the disjunctive "goods or materials" demonstrates that Congress was

13

purposefully adding a different means to qualify for FLSA coverage.  See, e.g., Spector v. Norwegian Cruise Line Ltd., 125 S. Ct. 2169, 2180 (2005) ("Title III does not define 'difficulty' . . . but use of the disjunctive--'easily accomplishable and able to be carried out without much difficulty or expense'--indicates that it extends to considerations in addition to cost.").  "[M]aterials" cannot be covered by the ultimate-consumer exception, an exception set out only in the Act's definition of "goods."  So, if Defendants in the cases now before us had employees "handling, selling, or otherwise working on . . . materials" (and Defendants met the statute's other requirements), Defendants would be subject to the FLSA.

Since the 1974 amendments, controversy has existed about the correct meanings of "goods" and "materials," in part because Congress did not specifically define "materials."  This confusion is a problem when applying the FLSA.  We must be able to distinguish "goods" from "materials" to know whether the ultimate-consumer exception might apply: the exception applies to some "goods" but never to "materials."  We turn now to discuss what Congress intended by "goods" and "materials" and the interplay of those words in the handling clause.

Several basic principles of statutory interpretation guide our inquiry.  First, we presume that Congress intended "goods" and "materials" to have different meanings; and if the ultimate-consumer exception applies to items that are

14

"goods," the exception does not apply to items that are "materials." See Barnhart v. Sigmon Coal Co., 122 S. Ct. 941, 951 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted). Second, where Congress has provided a specific statutory definition, in this case for "goods," we may not ignore it: it is our obligation to give meaning to all of the statutory language that Congress enacted. See Burgess v. United States, 128 S. Ct. 1572, 1577 (2008); In re Hedrick, 524 F.3d 1175, 1189 (11th Cir. 2008). Third, as we determine the correct understanding of the word "materials" within the handling clause, we disfavor any construction that would cause an overlap with the definition of "goods"; we do not presume that Congress has by implication overruled a portion of the preexisting "goods" definition or the important ultimate-consumer exception that is part of that definition. See Rodriguez v. United States, 107 S. Ct. 1391, 1392 (1987) ("It is well settled, however, that repeals by implication are not favored and will not be found unless an intent to repeal is clear and manifest.") (internal citations and quotation marks omitted).

What did Congress mean by "materials" for the purposes of the handling clause? When we interpret a statute, "[w]e interpret words that are not defined in a

15

statute with their ordinary and plain meaning because we assume that Congress uses words in a statute as they are commonly understood; we give each provision full effect." United States v. Frank, 599 F.3d 1221, 1234 (11th Cir. 2010) (citation omitted).

We believe that two ordinary definitions of "materials" might relate to the FLSA. One definition views "materials" as the "apparatus (as tools or other articles) necessary for doing or making something." Webster's Third New Int'l Dictionary: Unabridged 1392 (1993); see also 9 Oxford English Dictionary 1077 (2d ed. 1989) (defining "material" as "[t]ools, implements, or apparatus for performing an action"). A second definition defines "materials" as "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, building, fabric) is made." Webster's Third New Int'l Dictionary: Unabridged 1392 (1993); see also 9 Oxford English Dictionary 1077 (2d ed. 1989) (defining "material" as "[t]he elements, constituent parts, or substance of something" and "[t]he matter from which an article, fabric, or structure is made"). Looking only to the word's ordinary meaning, it seems that "materials" as used in the FLSA could potentially include items used in performing actions or services (e.g. describing pen and paper as "writing materials"), items that serve as a component of something else, or both.

16

But precisely determining the correct ordinary meaning of "materials" for the FLSA is challenging because the FLSA's statutory definition of "goods" is so expansive, ostensibly including some items that could also fall under the ordinary meaning of "materials."  Much of the FLSA's definition of "goods" is comprised, it seems, of synonyms for items sold by a business: "goods . . . , wares, products, commodities, merchandise, or articles . . . ."  29 U.S.C. § 203(i).  But Congress's expressed definition for "goods" also includes "or any part or ingredient thereof." Id.  The plain text of this last phrase indicates to us that, of the two ordinary meanings that we identified for "materials," the second one--the one involving constituent parts--overlaps with part of the statutory definition of "goods." Compare id. ("any part or ingredient thereof") with 9 Oxford English Dictionary 1077 (2d ed. 1989) ("[t]he elements, constituent parts, or substance of something").

We must interpret the FLSA in a way that Congress's 1974 addition of the words "or materials" does not impliedly repeal the unchanged "goods" definition or that definition's ultimate-consumer exception.  Therefore, we believe that the most accurate view of Congress's intent for the interplay between "goods" and "materials" in the FLSA--one that does not impliedly repeal some of the statutory definition of "goods"--is to read "materials" in the FLSA this way: "materials" in the FLSA means tools or other articles necessary for doing or making something.

17

See Webster's Third New Int'l Dictionary: Unabridged 1392 (1993).  We believe that this interpretation is true to the ordinary meaning of "materials" and avoids conflict with the statutory "goods" definition.[4]

The FLSA's legislative history helps to confirm our interpretation.  Before proceeding, we must note that severe problems attend the use of legislative history in statutory interpretation; its analysis is a practice that we seek regularly to avoid.  See United States v. Fields, 500 F.3d 1327, 1333-35 (11th Cir. 2007) (Carnes, J., concurring) (expressing many reservations about legislative history).  We do not rely on legislative history at all when a statutory text is unambiguous or manifests some plain meaning.  See Rine v. Imagitas, Inc., 590 F.3d 1215, 1222 (11th Cir. 2009); Fields, 500 F.3d at 1330.  But while looking to legislative history may always be dangerous, it is not always wrong.  Its use may become necessary where the statutory text is doubtful.  See Fields, 500 F.3d at 1330.  On its face, the inclusion of "or materials" in section 203(s)(1)(A)(i)--given the "goods" definition--makes the FLSA's intended meaning less than plain, we think.

The legislative history explains the purpose of the 1974 amendments this way:

---

[4] We do not rule out today that additional meanings of "materials" might also exist that also preserve the unchanged "goods" definition and the important ultimate-consumer exception. But no party has drawn our attention to such a definition of "materials" in this case.

18

The bill also adds the words "or materials" after the word "goods" to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry . . . .

Although a few district courts have erroneously construed the "handling" clause as being inapplicable to employees who handle goods used in their employer's own commercial operations, the only court of appeals to decide this question and the majority of the district courts have held otherwise and the addition of the words "and materials" [sic.] will clarify this point.[5]

S. Rep. No. 93-690, at 17 (1974) (internal citations omitted).  This report language

helps to confirm that Congress intended its 1974 amendments to expand the

number of employers subject to the Act.  See Dunlop v. Indus. Am. Corp., 516

F.2d 498, 502 n.8 (5th Cir. 1975); S. Rep. No. 93-690, at 17 (1974) (describing

"materials" as an "additional basis of coverage"); Mack A. Player, Enterprise

Coverage Under the Fair Labor Standards Act: An Assessment of the First

Generation, 28 Vand. L. Rev. 283, 341 (1975) ("[T]he addition of the word

'materials' clearly indicated that coverage was not to be restricted by the 'ultimate

consumer' restriction on the definition of 'goods.'  'Materials' is not defined in the

Act and thus its literal meaning is not restricted.").[6]

---

[5] Representative of the decisions criticized by this report is a case where a building owner/manager was held not subject to FLSA coverage despite its janitorial employees' handling of interstate products such cleaning materials and light bulbs: the court believed that the ultimate-consumer exception applied to prevent FLSA coverage.  See Shultz v. Wilson Bldg., Inc., 320 F. Supp. 664, 669 (S.D. Tex. 1970).

[6] Within a decade of the 1974 amendment, several courts of appeals concluded that service businesses that used interstate "goods or materials" in their commercial activity were

19

Furthermore, the report's sole example of "soap used by a laundry" fits within our view of how "goods" and "materials" are related in the handling clause. In the example, soap is not used as "materials" where that word means the "basic matter" from which something physical is made. But it does fit the definition of "materials" that we accept today. One could easily consider the soap in this example as an "article[] necessary for doing something," for instance, washing clothes. While for us it is the statutory text, not the legislative history, that must control, the legislative history here helps confirm that where a business provides a service using an item as part of its "commercial operations," Congress intended for those kinds of items to be viewed as "materials."

It counts with us that the Department of Labor, the agency in charge of administering the FLSA, has argued that the resolution of this definitional conflict between "goods" and "materials" should result in expanded FLSA coverage where employees use an item that qualifies as "materials." Brief for Sec'y of Labor as Amicus Curiae in Support of Plaintiffs-Appellants, at 13, 15, 17-23, Bien-Aime v. Nanak's Landscaping, Inc., No. 08-15290 (11th Cir. Jan. 27, 2009), and Polycarpe

---

covered by the FLSA despite Congress's decision not to amend the "goods" definition; perhaps important, over the course of more than three decades, Congress has declined to re-amend that text to overturn, in effect, those decisions. See, e.g., Donovan v. Pointon, 717 F.2d 1320, 1322-23 (10th Cir. 1983); Marshall v. Brunner, 668 F.2d 748, 751-52 (3d Cir. 1982); Donovan v. Scoles, 652 F.2d 16, 18 (9th Cir. 1981); Dunlop v. Indus. Am. Corp., 516 F.2d 498, 500-502 (5th Cir. 1975) (dicta). See also Dole v. Odd Fellows Home Endowment Bd., 912 F.2d 689, 695 (4th Cir. 1990).

20

v. E&S Landscaping Serv., Inc., No. 08-15154 (11th Cir. Jan. 27, 2009); cf. Auer v. Robbins, 117 S. Ct. 905, 912 (1997) (allowing consideration of an amicus brief containing an agency's interpretation of its own regulations).  The Department of Labor has issued an opinion letter suggesting that employees who, in their employer's commercial activities, use items that count as "goods" or "materials" can subject the employer to FLSA coverage.  See Op. Letter, Fair Labor Standards Act (Dep't of Labor Jan. 22, 1997), 1997 WL 958726 (concluding that a fast-food retailer could be covered by the FLSA under the handling clause based on commercial use of interstate "coffee served, cleaning supplies utilized, cooking equipment (ranges[,] fryers, grills) operated, etc.").  These views are not binding on our de novo review of the FLSA's proper interpretation, see Stern v. Int'l Bus. Mach. Corp., 326 F.3d 1367, 1372 (11th Cir. 2003) (stating that opinion letters are not binding); but we can accord respect to the Agency's views and give it weight as a source of persuasive authority.  See Christensen v. Harris Cnty., 120 S. Ct. 1655, 1663 (2000); Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1305 (11th Cir. 2008).  The Agency's views seem in accord with our understanding of the handling clause; we imagine that, where a restaurant uses interstate cooking equipment as an article to perform its commercial activity of serving food, the restaurant is engaged with "materials" that will subject the business to FLSA coverage.

21

Having discussed the relationship between "or materials" and the "goods" definition, actually applying the FLSA requires a further step of determining--in the circumstances of an immediate case--whether a given item actually counts as "goods" or "materials" (it could also count as neither).  Whether an item counts as "materials" will depend on two things: 1) whether, in the context of its use, the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business.

First, whether an item counts as "materials" depends on whether the item is serving as a material in context.  As we just discussed, to count as "materials," an item must fall within that word's ordinary meaning within the FLSA handling-clause context: as tools or other articles necessary for doing or making something.  Depending on how they are used, china dinner plates that are produced out of state, for instance, could count as either "goods" or "materials."  Where a catering business uses the china plates at a client's banquet, the plates count as part of the "materials" necessary for serving a catered meal.  But, where a department store sells the same china plates as stand-alone items, the plates count as "goods" for that retailer.

Second, for an item to count as "materials" it must have a significant connection with the employer's commercial activity; the business may not just

somehow internally and incidentally consume the item.  This requirement is compelled because the statute covers not <u>all</u> "goods" and "materials," but only "goods" and "materials" that a company is engaged in "handling, selling, or otherwise working on."  29 U.S.C. § 203(s)(1)(A)(i).[7]

All of these terms in context denote a connection to the employer's work: its commercial activity.  "[S]elling" and "working on" clearly do; "handling" does as well.  The ordinary meaning of "handling" in the business world to which the FLSA speaks is to "have or cause to pass through one's hands in commercial transactions" or "to trade in: engage in the buying, selling, or distributing of (a commodity)."  <u>Webster's Third New Int'l Dictionary: Unabridged</u> 1027 (1993).  <u>See also</u> <u>6 Oxford English Dictionary</u> 465 (2d ed. 1989) (defining "handle" as "[t]o have in hand or pass through one's hands in the way of business; to trade or deal in; to buy and sell.").[8]  Returning to our example of china dinner plates that are

_____

[7] Department of Labor regulations also instruct that the "handling, selling, or otherwise working on" must occur "<u>regularly</u> and <u>recurrently</u>" and not only on "<u>isolated</u> or <u>sporadic</u> occasions."  29 C.F.R. § 779.238 (emphasis added).  We accept this view; we believe Congress is addressing the routine of a business, not isolated or exceptional moments.  Along the same line, Congress, we expect, did not preclude a de minimis rule where the total value of the pertinent "goods" and "materials" is small.

[8] Department of Labor regulations provide additional evidence that this commercially oriented definition is the correct one.  <u>See</u> 29 C.F.R. §779.240 (describing FLSA "handling" using commercial, not generic, terms).  The FLSA's statutory definition of "[p]roduced" also uses much of the very language employed by the handling clause.  <u>See</u> 29 U.S.C. § 203(j) (stating that the production of goods includes "producing, manufacturing, mining, <u>handling</u>, transporting, or in any other manner <u>working on</u> such goods") (emphasis added); 29 C.F.R. § 779.240(b) (noting the connection between the handling clause and section 203(j)).  Finally, the

23

produced out of state, for a caterer that uses the china plates while providing catering services, the plates count as "materials" because they have a significant connection to the business's commercial activity of catering. But for an accounting firm that uses the same china plates as objects of decoration mounted on its lobby wall, the china plates cannot count as "materials" because the plates have no significant connection to the business's accounting work.[9]

This focus on the context of an item's use in the pertinent commercial setting ensures that the item is given accurate statutory meaning and legal significance within the framework of a statute designed to cover some--but not all--employers. So, contrary to some of Plaintiffs' arguments, we believe that the ordinary meaning of "handling, selling, or otherwise working on" is not so expansive as to be limitless; not every employer that meets the $500,000 sales threshold must be subject to the FLSA. It seems to us that an employee who uses an item at work will only sometimes be "handling, selling, or otherwise working on" the item for the purposes of FLSA coverage: an item's use must have a significant connection to the employer's business purposes.

---

statute gives "sell" a specific commercial definition. See 29 U.S.C. § 203(k) (defining "sale" and "sell" as including "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition").

[9] The china plates in this example seem likely to count as "goods" that are subject to the ultimate-consumer exception because the accounting firm is the items' ultimate consumer.

24

Therefore, we conclude that for the purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the definition of "materials"--tools or other articles necessary for doing or making something--in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purposes.

## III. APPLICATION

We now apply these rules to the facts contained in each of the six consolidated cases.

Three of the cases involved installation or repair companies.  In <u>Lamonica v. Safe Hurricane Shutters</u>, Defendant had employees installing shutters containing blades that were evidenced to have been made in Columbia.  The district court incorrectly relied on the "coming to rest" doctrine and misinterpreted the ultimate-consumer exception in concluding that Plaintiffs could not show enterprise coverage under the FLSA.  Moreover, the district court failed to consider whether the evidence that Plaintiffs presented raised a genuine and important question of fact under the handling clause; instead of analyzing that portion of the FLSA, the district court mistakenly relied on the interpretive framework of an <u>individual-</u>

25

coverage case.

In <u>Milbourn v. Aarmada Protection Systems 2000, Inc.</u>, Defendant had employees installing burglar alarms with wires, key pads, and other components manufactured out of state. The district court mistakenly relied on the "coming to rest" doctrine to conclude that Defendant was not subject to enterprise coverage under the FLSA because all of the commercial items that the Plaintiff employees used were purchased locally. Then, the district court failed to consider whether the evidence that Plaintiffs presented raised a genuine and important question of fact under the handling clause.

In <u>Vallecillo v. Wall to Wall Residence Repairs, Inc.</u>, Defendants had employees making home repairs using items, including paint, tape, and coarse drywall screws, evidenced to have been produced in or moved interstate.[10] The district court mistakenly relied on the "coming to rest" doctrine to conclude that Defendant was not subject to enterprise coverage under the FLSA because all of the commercial items that Plaintiff employees used were purchased locally.

According to Plaintiffs, these cases include some evidence of "goods" or

---

[10] According to the district court, Plaintiffs in this case failed to contest Defendants' facts asserted in their motion for summary judgment; and the court took Defendants' facts as true. Because one of these uncontested facts was that Defendants <u>bought</u> all materials from local retailers, the district court concluded that there was no commerce as defined in the FLSA. We leave it for the district court to resolve ultimately the factual questions; but, in doing so, the court must inquire about the origin of the alleged goods and materials--as it has not yet done--and may not merely rely on the "coming to rest" doctrine.

"materials" (or both) that employees have been "handling, selling, or otherwise working on" in a commercial context. We think so, too. In these cases, the district courts erroneously relied on the "coming to rest" doctrine in granting motions for summary judgment for Defendants, and the district courts did not correctly analyze whether items commercially used by Plaintiff employees could result in FLSA coverage under the handling clause.[11] The inquiry for enterprise coverage under the FLSA is whether the "goods" or "materials" were in the past produced in or moved interstate, not whether they were most recently purchased intrastate. See Brennan, 479 F.2d at 1031. Neither this question nor whether the items evidenced by Plaintiffs support enterprise coverage under the handling clause as either "goods" (not subject to the ultimate-consumer exception) or as "materials" has been answered by the district courts.

Two of the other cases involved landscaping companies. In Bien-Aime v. Nanak's Landscaping, Inc., Defendant had employees performing various landscaping tasks such as weeding and raking. Plaintiffs evidenced a number of specific items, including, for example, lawn mowers, edger blades, trucks, pencils, and gasoline, that might bring Defendant under FLSA coverage based on the

---

[11] Defendants in Milbourn and Lamonica declined to contest that their businesses met the $500,000-in-sales element for FLSA coverage. See 29 U.S.C. § 203(s)(1)(A)(ii). In Vallecillo, that element remains a genuine issue of material fact.

handling clause.  But in the district court's interpretation of the handling clause, the district court concluded generally that Plaintiffs had not introduced sufficient evidence that Defendant's local business could fall under enterprise coverage of the FLSA.[12]  Given our interpretation of the handling clause, the district court will need to decide whether the items evidenced by Plaintiffs were produced in or moved interstate and, if so, whether enterprise coverage exists under the handling clause because those items count as "goods" (not subject to the ultimate-consumer exception) or as "materials."[13]

The second landscaping case is <u>Polycarpe v. E&S Landscaping Service, Inc.</u>, where, like <u>Bien-Aime</u>, the Defendant had employees performing different landscaping tasks.  The district court mistakenly relied on the "coming to rest" doctrine to conclude that items purchased in Florida could not count towards enterprise coverage under the FLSA.  The district court additionally concluded that a number of items could not count as "goods" or "materials" under the handling clause, even if the items had moved interstate or had an interstate connection.[14]

---

[12] Plaintiffs request this Court to take judicial notice of the interstate nature of some of these items.  We decline at this time to take judicial notice of facts.  The district court has not yet ruled on this issue and is allowed ultimately to resolve the factual disputes as it finds them.

[13] Defendants stipulated that the business met the $500,000-in-sales element for FLSA coverage.  <u>See</u> 29 U.S.C. § 203(s)(1)(A)(ii).

[14] Here, too, Plaintiffs request this Court to take judicial notice of the interstate nature of some of these items.  We decline at this time to take judicial notice of facts.  The district court

Given our interpretation of the handling clause, the district court will have to decide whether the items evidenced by Plaintiffs were produced in or moved interstate and, if so, whether enterprise coverage exists under the handling clause because those items count as "goods" (not subject to the ultimate-consumer exception) or as "materials."[15, 16]

The final case, Flores v. Nuvoc, Inc., resulted in a jury verdict for Plaintiffs; but the verdict was later overturned by the district court's ruling in favor of Defendants' motion for Renewed Judgment as a Matter of Law.  The district court concluded that Plaintiffs failed to meet their burden to establish by a preponderance of the evidence the second element for FLSA enterprise coverage: that the business must have an "annual gross volume of sales made or business done not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii).  Having examined the record, we agree with the district court that insufficient evidence was presented for a jury to conclude reasonably that Nuvoc, Inc. met the $500,000 threshold during

---

previously denied Plaintiffs' request for judicial notice because the court did not believe that the facts would be important.  These factual questions are important, and the district court is allowed to resolve ultimately these factual questions on remand as it finds them.

[15] Defendants stipulated that the business met the $500,000-in-sales element for FLSA coverage.  See 29 U.S.C. § 203(s)(1)(A)(ii).

[16] In Polycarpe and Lamonica, Defendants argue that some Plaintiffs are "illegal immigrant workers" and that such workers are not entitled to relief under the FLSA.  Because the district court has made no finding about Plaintiffs' immigration status, we decide nothing today about the FLSA's application to "illegal immigrant workers."

the relevant time.  Nuvoc's corporate tax returns for the years 2005 ($191,088) and 2006 ($211,000) fell far below the threshold amount.  Nor do Plaintiffs persuasively increase those amounts by citing construction loans, internal business transactions, old contracts for sale before the employment period at issue, or expected future proceeds from property sales or ongoing litigation.  Because Plaintiffs' inability to satisfy the $500,000 element for enterprise coverage disposes of their case, we need not address other contentions.

## IV. CONCLUSION

We affirm the district court's judgment as a matter of law for Defendants in Flores v. Nuvoc, Inc.  In each of the other cases, we leave for the district courts to resolve the factual issues of whether the items cited by Plaintiffs were at any time in the past produced in or moved interstate.  If there are interstate items, the district courts must then decide, for those interstate items, whether the handling clause supports FLSA enterprise coverage because the items are "goods" (not subject to the ultimate-consumer exception) or "materials."[17]

---

[17] In so doing, the district courts may conclude that an employer is covered by the FLSA because its employees handle "goods" (not subject to the ultimate-consumer exception) without having to decide whether the employees handle any "materials," or vice versa.

30

The district court's order granting judgment as a matter of law for Defendants in <u>Flores v. Nuvoc, Inc.</u> is AFFIRMED.  In each of the other cases, we VACATE the district courts' orders granting summary judgment for Defendants and remand the cases for proceedings consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:_____
Deputy Clerk
Atlanta, Georgia

31